**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **DANNETTE MARIE DARMODY, PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM SHAWN DARMODY**, | Case No. 3:21-cv-01261-IM |
| | **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff, | |
| v. | |
| **CLATSOP COUNTY**, an Oregon county; **THOMAS J. BERGIN**, an individual; **MATTHEW D. PHILLIPS**, an individual; **TESSY D. WORKMAN**, an individual; **THOMAS J. TEAGUE**, an individual; **JOSEPH M. CLEARY**, an individual; **KYLE K. BUSH**, an individual; **ALYCIA A. PITTS**, an individual; **DAVID C. HILLARD**, an individual; **AARON W. PARKS**, an individual; **TRACY J. MAURER, LPN**, an individual; **THOMAS S. DUNCAN, M.D.**, an individual, | |
| Defendants. | |

Aaron R. Tillmann, Tillmann Law, LLC, 101 SW Main Street, Suite 1905, Portland, OR 97204. Attorney for Plaintiff.

PAGE 1 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Kenneth S. Montoya, Montoya Law LLC, 350 Mission Street SE, Suite 202, Salem, OR 97302. Attorney for Defendants.

**IMMERGUT, District Judge.**

Before this Court is Defendants' Motion for Partial Summary Judgment ("MPSJ"), ECF 68. This case involves the medical treatment Plaintiff William Shawn Darmody received at Clatsop County Jail after being injured during transport.[1] Plaintiff brings claims of state-law negligence against Clatsop County and eleven individual Defendants,[2] as well as claims under the Eighth Amendment against Defendant Tracy J. Maurer, a nurse at Clatsop County Jail, and Defendant Aaron W. Parks, a sergeant at Clatsop County Jail.[3] First Amended Complaint, ECF 57 ¶¶ 57–114. For purposes of this Motion, Defendants Parks and Maurer seek summary judgment on Plaintiff's Eighth Amendment claims against them.

As explained below, Defendants' Motion is GRANTED in part and DENIED in part. Defendant Parks is entitled to summary judgment on Plaintiff's Eighth Amendment claim against him because there are no genuine disputes of fact regarding whether Defendant Parks acted with conscious disregard to an excessive risk to Plaintiff's health or safety. The undisputed facts establish that Defendant Parks was not subjectively aware of the excessive risk Plaintiff faced.

---

[1] Mr. Darmody has since passed away, and Dannette Marie Darmody represents his estate in this action. For ease of understanding, this Opinion refers to Mr. Darmody as "Plaintiff."

[2] The parties agree that there are genuine disputes of material fact as to the state-law negligence claim against all Defendants. Defendants do not seek summary judgment on Plaintiff's negligence claim, *see* MPSJ, ECF 68 at 2, and this Court does not consider that claim in this Opinion and Order.

[3] According to Defendants' instant Motion, Plaintiff "agree[d] to dismiss Claims 1, 2, 3, 6, and 7" from the First Amended Complaint, which alleged Eighth Amendment violations against Defendants Workman, Cleary, Bush, Duncan, Bergin and Clatsop County. *See* MPSJ, ECF 68 at 2. Given the parties' agreement, those claims are DISMISSED.

Alternatively, Defendant Parks is entitled to qualified immunity because a reasonable official in his position would not have been on notice that his conduct violated a clearly established right. Defendant Parks is also entitled to summary judgment on Plaintiff's supervisory liability claim against him because there are no genuine issues of fact regarding Defendant Parks's personal involvement in the alleged constitutional violation. And as with the Eighth Amendment claim against Defendant Parks as an individual, Defendant Parks is entitled to qualified immunity on Plaintiff's supervisory liability claim.

On the other hand, Defendants' Motion is denied as to Defendant Maurer. Considering the undisputed facts, and resolving disputes of fact in Plaintiff's favor, a reasonable jury could conclude that Defendant Maurer acted with deliberate indifference toward Plaintiff and the serious medical risk he faced. Further, any reasonable official in Defendant Maurer's position would have been on notice that her alleged conduct violated Plaintiff's constitutional rights; Defendant Maurer is not entitled to qualified immunity.

## BACKGROUND

On August 29, 2019, Plaintiff was taken into custody at the Marion County Transport Hub by Defendant Tessy D. Workman of the Clatsop County Sheriff's Office. Joint Statement of Agreed Upon and Undisputed Facts ("Undisputed Facts"), ECF 66 at 18 ¶ P2. Defendant Workman transported Plaintiff and one other inmate from the Marion County Transport Hub to the Clatsop County Jail. *Id.*; *see also* Pick Up Video, ECF 72-1 at 00:28–01:50; Unloading Transport Video, ECF 72-2 at 01:06–02:13. During the transport, Defendant Workman suddenly applied the brakes in order to avoid a collision with another vehicle. Undisputed Facts, ECF 66 at 18 ¶ P8. This action caused Plaintiff, who was lying down on one of the benches in the back of the transport vehicle, to fall off the bench and onto the floor. *Id.* Plaintiff reported to Deputy

Workman that he had injured his neck and knees as a result of the fall and was unable to turn around to speak to her. *Id.* at 18 ¶¶ P9, P12.

Upon arrival at the Clatsop County Jail, Plaintiff required assistance exiting the transport vehicle and moving into the booking area. *See* Unloading Transport Video, ECF 72-2 at 01:11–02:35; *see also* Undisputed Facts, ECF 66 at 19 ¶ P34. As Defendant Workman's body camera footage shows, Plaintiff was yelling out in pain and unable to stand up or walk without assistance. *See* Unloading Transport Video, ECF 72-2 at 01:11–02:35. Once inside the booking area, jail staff provided Plaintiff with a wheelchair and a walker for mobility assistance. Undisputed Facts, ECF 66 at 19 ¶ P35.

Defendant Workman reported the transport incident and Plaintiff's injury to Defendant Parks, who was the on-duty jail sergeant. *Id.* at 18 ¶ P15. Defendant Parks did not speak to anyone other than Defendant Workman about Plaintiff, and Defendant Parks did not himself observe Plaintiff's condition. *Id.* at 20 ¶¶ P49–53; *see also id.* at 21 ¶ D11.

Defendant Workman also reported the transport incident and Plaintiff's injury to Defendant Maurer. *Id.* at 18 ¶ P17. Upon being informed of the transport incident and Plaintiff's injury, Defendant Maurer told Defendant Workman that she would speak with the jail's medical director, Defendant Thomas Duncan, M.D., to determine how to proceed. *Id.* at 18 ¶ P19. During Plaintiff's booking process, Defendant Maurer spoke with Plaintiff and conducted a physical assessment. *Id.* at 19 ¶¶ P31–34. Defendant Maurer knew that Plaintiff had been provided with a wheelchair and a walker for mobility assistance. *Id.* at 19 ¶¶ P35–36. Plaintiff told Defendant Maurer that his back was "totally out," that he "needed a lot of help" getting into the booking area, and that he "could not stand up on [his] own right now," to which Defendant Maurer asked, "Because of the roll off the bench?" *Id.* at 19 ¶ P34. Plaintiff replied, "Yes ma'am." *Id.*

Defendant Maurer testified that she spoke with Defendant Duncan regarding Plaintiff, but she does not recall what was said during that conversation. Tracy Maurer Deposition ("Maurer Dep."), ECF 69-1 at 23:25–26:25. Defendant Duncan does not recall speaking to Defendant Maurer regarding Plaintiff. Thomas Duncan Deposition ("Duncan Dep."), ECF 69-3 at 33:21–34:19. Defendant Duncan has no notes or other documentation memorializing any conversation with Defendant Maurer regarding Plaintiff. Undisputed Facts, ECF 66 at 19 ¶ P24. Defendant Duncan never spoke to nor had any contact with Plaintiff. *Id.* at 19 ¶ P25. The parties dispute whether Defendant Maurer called Defendant Duncan, *id.* at 21 ¶ 1, and Plaintiff maintains that there is no evidence in the relevant phone records that a call was made to Defendant Duncan after Plaintiff's arrival on August 29, *id.* at 19 ¶¶ P26–30.

Defendants cannot identify the individual who made the decision to medically clear Plaintiff for admission to the Clatsop County Jail. *Id.* at 20 ¶ P41. Defendant Maurer was charged with the responsibility for medically clearing Plaintiff, but she did not do so. *Id.* at 20 ¶ P42. The parties dispute whether Plaintiff was "examined by a qualified medical professional prior to his being lodged" at the jail on August 29, *id.* at 22 ¶ 3, and whether he was ever "medically cleared for admission" to the jail on August 29, *id.* at 22 ¶ 2. Plaintiff was housed in Cell 52, *id.* at 20 ¶ P43, which is a single administrative segregation cell equipped and used for medical observation, *see id.* at 20 ¶ P44; *see also* Aaron Parks Deposition ("Parks Dep."), ECF 69-5 at 16:15–17:8; Maurer Dep., ECF 69-1 at 56:3–18. Defendants cannot identify the individual who made the decision to house Plaintiff in Cell 52. Undisputed Facts, ECF 66 at 20 ¶ P45. Although it is typically the jail shift supervisor, in conjunction with on-duty staff, who makes the decision to house an individual in Cell 52, Defendant Parks does not know why Plaintiff was housed there. *Id.* at 20 ¶¶ P47–48

PAGE 5 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Five days after he arrived, Plaintiff was released from Clatsop County Jail. *Id.* at 20

¶ P54. The day after being released, Plaintiff went to the Emergency Department at Oregon

Health Science University in Portland, complaining of low back pain, numbness, and urinary

incontinence. *Id.* at 20 ¶¶ P55–56. He was diagnosed with lumbar stenosis and Cauda Equina

Syndrome. *Id.* at 20 ¶ P57. The next day, on September 5, 2019, Plaintiff underwent inferior L3,

complete L4, and superior L5 laminectomy and L3-4 and L4-5 medial facetectomies. *Id.* at 20

¶ P58. After eight days in the hospital, Plaintiff was discharged. *Id.* at 20 ¶ P59.

Over the following three-and-a-half years, until his death in March 2023 from a condition

unrelated to this incident, Plaintiff suffered from saddle anesthesia, urinary incontinence, and

sexual dysfunction. *Id.* at 21 ¶¶ P60–65. The parties dispute whether prompt medical

intervention would have altered Plaintiff's prognosis for recovery of his neurological functions.

*Id.* at 22 ¶¶ 4–6.

## LEGAL STANDARDS

### A.  Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view the

evidence in the light most favorable to the non-movant and draw all reasonable inferences in the

non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir.

2001).

Although "[c]redibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a

motion for summary judgment," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

## B. Qualified Immunity

In evaluating whether a defendant is entitled to qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 200–01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). "While the constitutional violation prong concerns the reasonableness of the officer's *mistake of fact*, the clearly established prong concerns the reasonableness of the officer's *mistake of law*." *Torres v. City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011). Either question may be addressed first, and if the answer to either is "no," then the state actor cannot be held liable for damages. *See Pearson*, 555 U.S. at 236. The "qualified immunity analysis remains objective even when the constitutional claim at issue involves subjective elements." *See Sandoval v. County of San Diego*, 985 F.3d 657, 674 (9th Cir. 2021) (citation omitted).

The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015) (citations omitted). "The dispositive question is whether the violative nature of particular conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks omitted) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). As the "Court explained decades ago, the clearly established law must be

'particularized' to the facts of the case. Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (alteration in original) (citation omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)). The Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al–Kidd*, 563 U.S. at 741 (citations omitted).

## DISCUSSION

Defendants argue that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. A prison official's "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment because it constitutes "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). "This is true whether the indifference is manifested by prison [healthcare providers] in their response to the prisoner's needs or by prison [officials] in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted).

For inadequate medical care to violate the Eighth Amendment, the plaintiff must prove two elements: (1) "the existence of a serious medical need," that is, a condition that left untreated "could result in further significant injury or cause the unnecessary and wanton infliction of pain"; and (2) the prison official's "deliberate indifference" to that need. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks and citations omitted). The first element is objective, and generally is satisfied by a showing that the plaintiff's medical need is sufficiently "serious" such that the "failure to treat [the] condition could result in further significant injury or

the unnecessary and wanton infliction of pain." *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc) (citation omitted).

The second element is subjective, and it is "satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). This is a formidable standard, akin to criminal recklessness: the official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 839–40 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (explaining that, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," the evidence must show the defendant acted with a "sufficiently culpable state of mind" (internal quotation marks, emphasis, and citations omitted)). Thus, "mere malpractice, or even gross negligence," may be inexcusable, but they do not amount to deliberate indifference. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081 (9th Cir. 2013).

Whether a defendant charged with violating rights protected by the Eighth Amendment has the requisite knowledge is "a question of fact." *Farmer*, 511 U.S. at 842. Intentional ignorance of an obvious risk is not a defense to deliberate indifference. *Id.* When the risk is not obvious, the requisite knowledge may be inferred from evidence showing that the defendant refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. *Id.* at 842 & n.8. Prison officials will not be liable if they demonstrate "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were

therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844; *see also Wilson*, 501 U.S. at 298; *Lemire*, 726 F.3d at 1078 (requiring a plaintiff to demonstrate "that the risk was obvious or provide other circumstantial or direct evidence that the prison officials were aware of the substantial risk" to defeat summary judgment); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (noting that subjective awareness "may be satisfied if the inmate shows that the risk posed by the deprivation is obvious" (citation omitted)).

## A. Defendant Parks

Defendant Parks is entitled to summary judgment, both as an individual and as a supervisor, on Plaintiff's Eighth Amendment claims against him. Defendant Parks has demonstrated that there is no genuine issue of material fact as to his subjective awareness of a substantial risk to Plaintiff. Further, there is an absence of disputed facts as to the personal involvement of Defendant Parks as a supervisor in any constitutional violations suffered by Plaintiff. Alternatively, Defendant Parks is entitled to qualified immunity on the individual and supervisory liability claims. Given the existing case law, a reasonable officer in Defendant Parks's place would not have been on notice that his conduct violated clearly established law.

### 1. Individual Liability

#### a. Constitutional Violation

Defendants argue that Plaintiff cannot establish Defendant Parks's subjective awareness of an excessive risk to Plaintiff's health and safety.[4] MPSJ, ECF 68 at 6. "At most, Plaintiff can

---

[4] Defendants frame this argument as addressing Plaintiff's ability "to establish even the objective component of the Eighth Amendment standard that [Defendant] Parks had the requisite knowledge of an 'excessive risk' to [Plaintiff's] health and safety," MPSJ, ECF 68 at 6, but this misunderstands the test for deliberate indifference. The objective component requires "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of

PAGE 10 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

demonstrate [Defendant] Parks knew [Plaintiff] was injured during transport. But Plaintiff lacks

any evidence that [Defendant] Parks knew the nature or extent of [Plaintiff's] injury . . . ." *Id.*

Defendants also argue that Plaintiff failed to establish that Defendant Parks "act[ed] with a

sufficiently culpable state of mind," and instead that that Plaintiff showed nothing more than an

"inadvertent failure" on the part of Defendant Parks. *Id.* Defendants argue that this is not enough

to establish an Eighth Amendment violation. *Id.*

The undisputed evidence shows only that Defendant Parks knew that Plaintiff had been

injured during transport. Undisputed Facts, ECF 66 at 18 ¶¶ P15–16. Plaintiff offers no evidence

that Defendant Parks was informed about the nature and extent of Plaintiff's injuries. Defendant

Parks did not observe Plaintiff, nor speak with anyone other than Defendant Workman about the

transport incident. *Id.* at 19 ¶ P37, 20 ¶¶ P49–53. During his deposition, Defendant Parks

testified that Defendant Workman told him that "she had a report to write" because "there was a

situation with the vehicle and an individual, an inmate, got hurt." Parks Dep., ECF 69-5 at 14:4–

6.

Alongside Defendant Parks's specific knowledge relating to Plaintiff, Plaintiff also points

to Defendant Parks's general knowledge of the jail's policy that inmates who are involved in

motor vehicle accidents prior to arriving at the jail are sent to the hospital before being booked.

*See* Resp., ECF 69 at 21–22. But awareness of that policy does not impute to Defendant Parks

the necessary knowledge of this accident, this injury, and this individual. Defendant Parks's

---

comment or treatment; the presence of a medical condition that significantly affects an
individual's daily activities; or the existence of chronic and substantial pain are examples of
indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974
F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*,
104 F.3d 1133, 1136 (9th Cir. 1997). Defendants do not appear to contest that Plaintiff presented
a serious medical need, and so this Court considers the objective component established.

familiarity with this policy does not provide sufficient evidence for a jury to conclude that he appreciated the serious medical risk Plaintiff faced.

Plaintiff identifies one dispute of fact that he argues would establish Defendant Parks's subjective awareness of the risk to Plaintiff's health if the jury resolved the dispute in Plaintiff's favor. Plaintiff contends that because Cell 52 is sometimes used as a medical observation cell, and because the shift supervisor generally places inmates in Cell 52, and because Defendant Parks was the shift supervisor when Plaintiff was placed in Cell 52, then a jury could infer that Defendant Parks placed Plaintiff in Cell 52 and therefore was aware of Plaintiff's condition. To defeat summary judgment, "the nonmoving party must introduce some significant probative evidence tending to support the complaint. Summary judgment may be granted if the evidence is merely colorable . . . or is not significantly probative." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citations and internal quotation marks omitted). Given the undisputed evidence in the record, this possible inference is not enough to raise a genuine issue of fact and defeat summary judgment.

Plaintiff has not shown a genuine dispute of material fact as to whether Defendant Parks knew of an excessive risk to Plaintiff's serious medical needs. Without establishing this subjective knowledge, Plaintiff's Eighth Amendment claim against Defendant Parks cannot survive summary judgment.

### b. Qualified Immunity

Defendants also argue that Defendant Parks is entitled to qualified immunity because "no similar case law exists that would place [Defendant] Parks on notice that he would violate [Plaintiff's] constitutional rights based on the facts and circumstances known to him at the time." MPSJ, ECF 68 at 8. Plaintiff responds that Defendant Parks is not entitled to qualified immunity

"because [*Kelley v. Borg*, 60 F.3d 664 (9th Cir. 1995)] states that the Eighth Amendment rights in the prison medical context are clearly established." Resp., ECF 69 at 30.

*Kelley* does not place the constitutionality of Defendant Parks's conduct beyond debate. In *Kelley*, contractors were working on a prison's air supply ducts. 60 F.3d at 665. The plaintiff informed prison officials that fumes were entering his cell and asked to be let out. *Id.* The officials did not let him out, even after he stated that the fumes were killing him. *Id.* at 665–66. The plaintiff eventually lost consciousness. *Id.* at 666. The facts here are distinguishable. Even viewing the record in Plaintiff's favor, Defendant Parks did not encounter the direct, emergent medical situation faced by the officials in *Kelley*. Nor has this Court located binding precedent that would place the constitutionality of Defendant Parks's conduct beyond debate.

Defendant Parks is entitled to qualified immunity because it would not have been clear to a reasonable correctional officer knowing what he knew, even viewed in the light most favorable to Plaintiff, that Plaintiff faced a substantial risk of serious harm and Defendant Parks's conduct in response to that risk was deliberately indifferent.

## 2. Supervisory Liability

In addition to the Eighth Amendment claim against Defendant Parks as an individual, Plaintiff brings an Eighth Amendment claim against Defendant Parks as a supervisor. To establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("[W]hen a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the

culpable action or inaction of his or her subordinates."). Here, Plaintiff alleges that Defendant

Parks personally participated in the constitutional violation. *See* Resp., ECF 69 at 27.

Defendants argue that "[t]here is nothing in the record to demonstrate that [Defendant]

Parks knew anything of the nature and extent of [Plaintiff's] injuries such that he even knew

[Plaintiff] needed medical care." MPSJ, ECF 68 at 11. Without such knowledge, Defendants

contend, Defendant Parks could not have acted with the intent to wantonly inflict pain on

Plaintiff. *Id.* Additionally, Defendants argue that Defendant Parks is entitled to summary

judgment on this claim because "Plaintiff is incapable of demonstrating that [Defendant] Parks

had any knowledge of deficient actions on the part of others," and without this knowledge

Plaintiff cannot show that "[Defendant] Parks knowingly refused to stop actions by others which

he knew, or should have known, violated Plaintiff's constitutional rights." *Id.* Plaintiff responds

that Defendant Parks is liable "in his supervisory capacity for the same reasons that he is liable in

his individual capacity as articulated above because the facts demonstrate that he 'participated

in' the violation of [Plaintiff's] rights." Resp., ECF 69 at 27.

As articulated above, this Court concludes that Plaintiff has not identified disputes of fact

that, if resolved in his favor, would entitle him to relief against Defendant Parks in his individual

capacity for the Eighth Amendment claim. The same reasoning applies to Plaintiff's supervisory

liability claim against Defendant Parks—even viewing the record in Plaintiff's favor, Plaintiff

has not identified evidence or inferences from which a reasonable jury could conclude that

Defendant Parks personally participated in his capacity as a supervisor in the deprivation of

Plaintiff's Eighth Amendment rights.

Further, Defendant Parks is entitled to qualified immunity on Plaintiff's supervisory

liability claim. *See Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) (holding that a

defendant was entitled to qualified immunity on a supervisor liability claim). Plaintiff has not identified, nor has this Court located, case law that places the constitutionality of Defendant Parks's conduct as a supervisor beyond debate.

## B.  Defendant Maurer

### 1.  Eighth Amendment Violation

According to Defendant Maurer "Plaintiff's claims against [her] . . . amount to nothing more than an assertion that she provided deficient care to [Plaintiff]," which does not establish the culpable mental state necessary for a claim of cruel and unusual punishment under the Eighth Amendment. MPSJ, ECF 68 at 9. At most, Defendants contend, Defendant Maurer's conduct was "medical malpractice." *Id.*; *see also id.* ("Plaintiff has not alleged that Nurse Maurer failed to provide him with **any** medical care, but that she failed to provide him with '**adequate medical care**.'").

In response, Plaintiff contends that Defendant Maurer was subjectively aware of the medical risk he faced, and that she failed to provide Plaintiff with sufficient medical care. To establish Defendant Maurer's subjective awareness, Plaintiff points to the recording of him descending from the transportation vehicle, which depicts him doubled over, exclaiming in pain, and apologizing for his inability to move unassisted. Defendant Maurer examined Plaintiff shortly after the events in that video. Plaintiff points to the Inmate Medical Screening form for Plaintiff which was marked "other serious pain, back pain." Plaintiff points to Defendant Maurer's awareness that Plaintiff was provided with a wheelchair and walker to assist with his mobility. Plaintiff points to Defendant Maurer's direct interactions with Plaintiff, during which he informed her that his back was out and he was unable to stand up without help. Given these

facts, and resolving all inferences in Plaintiff's favor, a reasonable jury could conclude that Defendant Maurer was subjectively aware of the serious medical risk Plaintiff faced.

A jury could also conclude that, faced with this risk, Defendant Maurer effectively denied or delayed Plaintiff medical care for his back injury through her acts and omissions. Resolving disputes of fact in Plaintiff's favor, Defendant Maurer did not contact the jail's medical director, Defendant Duncan, to alert him about Plaintiff's condition and seek his guidance. Rather, it appears that Defendant Maurer continued providing Plaintiff with medications that had been provided by a previous facility—blood pressure medication and acetaminophen. It does not appear that Defendant Maurer provided Defendant anything additional for his pain, nor that she referred Plaintiff to someone competent to diagnose and treat his injury. It is undisputed that Defendant Maurer was the individual responsible for medically clearing Plaintiff when he arrived at the jail, and it is also undisputed that Defendants "cannot identify the individual who made the decision to medically clear" Plaintiff for admission to the jail. Undisputed Facts, ECF 66 at 20 ¶¶ P41–42. Drawing reasonable inferences in Plaintiff's favor, a reasonable jury could conclude that Defendant Maurer did nothing to address Plaintiff's acute injury resulting from the transport incident, and that this inaction amounted to a denial or delay of medical care in the face of a serious risk to Plaintiff's health.

A reasonable jury could also find that this constitutional deprivation harmed Plaintiff—had he been diagnosed and received medical intervention sooner, he may have recovered neurological function. *See* Undisputed Facts, ECF 66 at 22 ¶¶ 5–6. Courts within the Ninth Circuit have held that similar delays of medical care can create a triable issue of fact, especially when the delay caused lasting damage. *See, e.g.*, *Jett*, 439 F.3d at 1094–95, 1097 (concluding that a nearly two-month wait for a doctor and nineteen-month delay before seeing a hand

specialist, as well as the complete failure to set and cast the inmate's badly fractured thumb, during which it "healed improperly," created a triable issue on deliberate indifference); *Hunt v. Dental Dep't*, 865 F.2d 198, 200–01 (9th Cir. 1989) (concluding that a "delay of more than three months" before offering dental care to repair plaintiff's "bleeding gums, breaking teeth and . . . inability to eat properly," resulting in "severe pain and . . . permanent damage to his teeth," created a triable issue on deliberate indifference); *Schafer v. Curry*, No. 08–1881 RMW, 2009 WL 1562957, at *9 (N.D. Cal. June 3, 2009) (seven-day delay in treating broken foot).

Defendant Maurer is not entitled to summary judgment on Plaintiff's Eighth Amendment claim against her. At the very least, there are issues of fact a jury must resolve regarding whether Defendant Maurer acted with deliberate indifference toward Plaintiff's serious medical need and, if so, whether that constitutional violation resulted in harm to Plaintiff.

### 2. Qualified Immunity

For Defendant Maurer, Defendants "incorporate their arguments for qualified immunity as set forth" for Defendants Parks." MPSJ, ECF 68 at 10. Defendants assert that "no similar case law . . . exists that would place [Defendant] Maurer on notice that she would violate [Plaintiff's] rights based on the facts and circumstances known to her at the time." *Id.* In response, Plaintiff points this Court to Ninth Circuit case law establishing that "prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment.'" Resp., ECF 69 at 6 (quoting *Lopez*, 203 F.3d at 1131); *id.* at 29 (citing *Kelley*, 60 F.3d 664).

In addressing qualified immunity, a court should "use its 'full knowledge of its own [and other relevant] precedents.'" *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (alteration in original) (quoting *Davis v. Scherer*, 468 U.S. 183, 192 n.9 (1984)); *see also Gordon v. County of Orange*,

6 F.4th 961, 969 (9th Cir. 2021). Along with the cases cited by Plaintiff, the Ninth Circuit's precedents have held that with respect to prisoner medical claims, the right at issue should be defined as a prisoner's Eighth Amendment right to officials who are not deliberately indifferent to serious medical needs. *See Stewart v. Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022) ("[I]t has been established that 'deny[ing], delay[ing], or intentionally interfer[ing] with medical treatment' can violate the constitution." (quoting *Colwell*, 763 F.3d at 1066)). And relevant for the facts of this case, the Ninth Circuit has recognized that "at a minimum, medical personnel at jail facilities are required to screen pretrial detainees for critical medical needs. Thus, at the time of the incident, [the plaintiff] had a clearly established constitutional right to have a proper medical screen conducted to ensure the medically appropriate protocol was initiated." *Gordon*, 6 F.4th at 971 (footnote omitted) (discussing cases published in 1990, 2002, and 2012).

Here, viewing the record in the light most favorable to Plaintiff and resolving disputes in his favor, Plaintiff presented at the jail with a critical medical need. As corroborated by Defendant Workman, the transport vehicle had been involved in a traffic incident. As the video shows, Plaintiff's knees were bloodied by his fall, he was unable to stand upright, and he required the assistance of two correctional officers and eventually a wheelchair and walker to move around the jail. Plaintiff had the right to be properly screened, but instead, again resolving disputes in Plaintiff's favor, Defendant Maurer claimed to contact the medical director but did not, nor did she provide any medical care to Plaintiff for this acute injury.

Resolving all inferences and disputes in Plaintiff's favor, Defendant Maurer violated Plaintiff's clearly established right to be free from cruel and unusual punishment. A reasonable official knowing what Defendant Maurer knew—that Plaintiff had been injured during transport, that he could not stand up without assistance, that he was provided with a wheelchair and a

PAGE 18 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

walker for mobility assistance, and that he reported experiencing intense pain—would likewise know that Defendant Maurer's actions and inactions were constitutionally deficient. Defendant Maurer is not entitled to qualified immunity.

## CONCLUSION

Defendants' Motion for Partial Summary Judgment, ECF 68, is GRANTED in part and DENIED in part. Defendant Parks is entitled to summary judgment on Plaintiff's Eighth Amendment claim against him because there are no genuine disputes of fact regarding whether Defendant Parks acted with conscious disregard to an excessive risk to Plaintiff's health or safety. Alternatively, Defendant Parks is entitled to qualified immunity because a reasonable official in his position would not have been on notice that his conduct violated a clearly established right. Defendant Parks is also entitled to summary judgment on Plaintiff's supervisory liability claim against him because there are no genuine issues of fact regarding Defendant Parks's personal involvement in the alleged constitutional violation. And as with the Eighth Amendment claim against Defendant Parks as an individual, Defendant Parks is entitled to qualified immunity on Plaintiff's supervisory liability claim.

On the other hand, Defendants' Motion is denied as to Defendant Maurer. Considering the undisputed facts, and resolving disputes of fact in Plaintiff's favor, a reasonable jury could conclude that Defendant Maurer acted with deliberate indifference toward the serious medical risk Plaintiff faced. Further, any reasonable official in Defendant Maurer's position would have been on notice that her alleged conduct violated Plaintiff's constitutional rights; Defendant Maurer is not entitled to qualified immunity.

///

///

PAGE 19 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**IT IS SO ORDERED.**

DATED this 1st day of March, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge